Michael S. Sommer
Jessica L. Margolis
Sheryl Shapiro Bassin
Dylan G. Savage
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

and

Lawrence I. Fox, Esq.
250 West 82nd Street
New York, New York 10024
Telephone: (917) 620-2778

*Attorneys for Plaintiffs and Counterclaim-Defendants Neopharm Ltd.,*
*Promedico Ltd., and Neopharm (Israel) 1996 Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEOPHARM LTD., PROMEDICO LTD., and NEOPHARM (ISRAEL) 1996 LTD., | CASE NO. 1:14-cv-08192-SHS |
| Plaintiffs and Counterclaim-Defendants, | **ECF CASE** |
| v. | |
| WYETH-AYERST INTERNATIONAL LLC f/k/a WYETH-AYERST INTERNATIONAL, INC., | |
| Defendant and Counterclaim-Plaintiff. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................ 3

    I.      THE DISTRIBUTION AGREEMENT AND WYETH'S UNLAWFUL
           TERMINATION .......................................................................................... 3

    II.     NEOPHARM'S OTEZLA-RELATED CONDUCT .......................................... 6

ARGUMENT ...................................................................................................................... 8

    I.      NEOPHARM IS ENTITLED TO SUMMARY JUDGMENT ON
           WYETH'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE FOR
           BREACH OF SECTION 2.7(a) OF THE DISTRIBUTION
           AGREEMENT ............................................................................................ 9

          A.     Wyeth Has Presented No Evidence that Neopharm Breached
                Section 2.7(a) of the Distribution Agreement as is Required to
                Sustain Wyeth's Claim ........................................................................ 10

                i.     Neopharm Did Not "Market or Promote the Sale or
                       Marketing of" Otezla Prior to Wyeth's Unlawful
                       Termination of the Distribution Agreement ................................ 11

                ii.    Wyeth's Attempt to Save its Fourth Counterclaim Through
                       a Self-Serving and Unsupported Interpretation of Section
                       2.7(a) Should be Rejected ........................................................... 16

          B.     Wyeth's Third Affirmative Defense Should Be Dismissed..................... 21

    II.     NEOPHARM IS ENTITLED TO SUMMARY JUDGMENT ON
           WYETH'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE FOR
           BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND
           FAIR DEALING .......................................................................................... 23

    III.    NEOPHARM IS ENTITLED TO SUMMARY JUDGMENT ON
           WYETH'S REMAINING AFFIRMATIVE DEFENSES .................................. 26

          A.     Wyeth's Accord and Satisfaction Defense Fails As A Matter of
                 Law ..................................................................................................... 26

          B.     Wyeth's Waiver, Estoppel, and Unclean Hands Defenses Fail ............. 28

CONCLUSION ................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*,
   72 F. Supp. 2d 350 (S.D.N.Y. 1999)................................................................20

*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's London*,
   136 F.3d 82 (2d Cir. 1998)..........................................................................13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).....................................................................................9

*Andrews v. Skott/Edwards Consultants, Inc.*,
   No. 81 Civ. 3961-CSH,
   1983 U.S. Dist. LEXIS 15730 (S.D.N.Y. July 1, 1983) ............................26, 27

*Atl. Cas. Ins. Co. v. Coffey*,
   548 F. App'x 661 (2d Cir. 2013) ..................................................................30

*Bank of Am., N.A. v. WM. V. Schmidt Co.*,
   No. 10 Civ. 4926 (NRB),
   2011 U.S. Dist. LEXIS 31285 (S.D.N.Y. Mar. 25, 2011) ..........................28, 29

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005)..........................................................................25

*Calico Cottage, Inc. v. TNB, Inc.*,
   No. 11-CV-0336 (DLI) (MDG),
   2014 U.S. Dist. LEXIS 137816 (E.D.N.Y. Sept. 29, 2014)......................25, 26

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...................................................................................8, 9

*Charity Grp., LLC v. Absolut Spirits Co.*,
   No. 08 Civ. 11020 (BSJ) (AJP),
   2010 U.S. Dist. LEXIS 146014 (S.D.N.Y. June 29, 2010)..............................24

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*,
   773 F.3d 110 (2d Cir. 2014).........................................................................15

*Chock Full O'Nuts Corp. v. Tetley, Inc.*,
   152 F.3d 202 (2d Cir. 1998)...............................................................10, 17, 20

*Cohen Lans LLP v. Naseman*,
No. 14-CV-4045 (JPO),
2017 U.S. Dist. LEXIS 15547 (S.D.N.Y. Feb. 3, 2017)....................................................29

*Columbus Park Corp. v. Dep't of Hous. Pres. & Dev. of City of N.Y.*,
80 N.Y.2d 19 (1992) ...................................................................................................20

*CSC Sci. Co. v. Manorcare Health Servs., Inc.*,
867 F. Supp. 2d 368 (S.D.N.Y. 2011)..........................................................................20

*Eastman Kodak Co. v. Altek Corp.*,
936 F. Supp. 2d 342 (S.D.N.Y. 2013).....................................................................15, 20

*Energy Capital Co. v. Caribbean Trading & Fid. Corp.*,
No. 93 Civ. 8100 (JFK),
1996 U.S. Dist. LEXIS 4170 (S.D.N.Y. Apr. 3, 1996) ....................................................9

*FDIC v. Giammettei*,
34 F.3d 51 (2d Cir. 1994)..............................................................................................9

*FDIC v. Wrapwell Corp.*,
Nos. 93 Civ. 859 (CSH), 94 Civ. 5574 (CSH),
2002 U.S. Dist. LEXIS 76 (S.D.N.Y. Jan. 2, 2002)........................................................9

*First Inv'rs Corp. v. Liberty Mut. Ins. Co.*,
152 F.3d 162 (2d Cir. 1998).........................................................................................10

*Fischer & Mandell, LLP v. Citibank, N.A.*,
632 F.3d 793 (2d Cir. 2011).........................................................................................10

*Fontana v. Potter*,
No. 01 CV 7002 (SLT) (RML),
2005 U.S. Dist. LEXIS 49932 (E.D.N.Y. Aug. 24, 2005)...............................................13

*Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*,
111 F.3d 284 (2d Cir. 1997)....................................................................................21, 22

*Golden v. Guar. Acceptance Capital Corp.*,
807 F. Supp. 1161 (S.D.N.Y. 1992)..............................................................................28

*Greenfield v. Philles Records, Inc.*,
98 N.Y.2d 562 (2002) .................................................................................................11

*Hall v. EarthLink Network, Inc.*,
396 F.3d 500 (2d Cir. 2005),
*aff'd*, 260 F. App'x 380 (2d Cir. 2008)..........................................................................24

*Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*,
    333 F. Supp. 2d 131 (S.D.N.Y. June 25, 2004) ...............................................23

*Jeffreys v. City of N.Y.*,
    426 F.3d 549 (2d Cir. 2005)............................................................................9

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
    386 F. Supp. 2d 461 (S.D.N.Y. 2005)............................................................29

*Katel LLC v. AT&T Corp.*,
    607 F.3d 60 (2d Cir. 2010)............................................................................20

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)...........................................................11, 13, 16

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
    639 F.3d 63 (2d Cir. 2011).............................................................................11

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990)........................................................................................8

*M/A-COM Sec. Corp. v. Galesi*,
    904 F.2d 134 (2d Cir. 1990)..........................................................................25

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
    842 F. Supp. 2d 682 (S.D.N.Y. 2012).........................................................9, 28

*Onanuga v. Pfizer, Inc.*,
    369 F. Supp. 2d 491 (S.D.N.Y. 2005)............................................................28

*Orfalea v. Clayton, Dubilier & Rice, Inc.*,
    No. 07 Civ. 2256 (BSJ) (GWG),
    2009 U.S. Dist. LEXIS 91342 (S.D.N.Y. Sept. 30, 2009)...............................20

*Ortho Diagnostic Sys., Inc. v. Abbott Labs., Inc.*,
    920 F. Supp. 455 (S.D.N.Y. 1996) ..................................................................9

*Peabody v. Weider Publ'ns, Inc.*,
    No. 04 CV 2165 (GBD),
    2006 U.S. Dist. LEXIS 93391 (S.D.N.Y. Dec. 22, 2006) ...............................24

*Platte River Ins. Co. v. Khan*,
    Nos. 13-CV-3265 (JG), 13-CV-3416 (JG),
    2015 U.S. Dist. LEXIS 88271 (E.D.N.Y. July 7, 2015)............................27, 28

*Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*,
 13 N.Y.3d 398 (2009) ....................................................................11

*Roswell Capital Partners LLC v. Alternative Constr. Techs.*,
 638 F. Supp. 2d 360 (S.D.N.Y. 2009)....................................29, 30

*Seven Star Shoe Co. v. Strictly Goodies, Inc.*,
 657 F. Supp. 917 (S.D.N.Y. 1987) .................................................13

*Stahl Mgmt. Corp. v. Conceptions Unlimited*,
 554 F. Supp. 890 (S.D.N.Y. 1983) .................................................26

*Suthers v. Amgen Inc.*,
 441 F. Supp. 2d 478 (S.D.N.Y. 2006).............................................26

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*,
 103 F. Supp. 2d 711 (S.D.N.Y. 2000),
 *aff'd*, 294 F.3d 383 (2d Cir. 2002) ..........................................21, 23

## ORDINANCES AND REGULATIONS

Israeli Pharmacists Ordinance (New Version) (1981) ..................................12

Israeli Pharmacists Regulations (Medicinal Products) (1986) ....................12

## RULES

Fed. R. Civ. P. 56....................................................................... *passim*

Fed. R. Civ. P. 56(a) ..........................................................................8

Local Civil Rule 56.1..........................................................................1, 3

Plaintiffs and Counterclaim-Defendants Neopharm Ltd., Promedico Ltd. ("Promedico"), and Neopharm (Israel) 1996 Ltd. ("Neopharm Israel," and collectively, "Neopharm") respectfully submit this memorandum of law, together with the accompanying Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1, and the Declaration of Sheryl Shapiro Bassin, and the exhibits attached thereto (including but not limited to the Declaration of David Fuhrer, dated December 22, 2017) in support of their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 ("Motion") on Defendant and Counterclaim-Plaintiff Wyeth-Ayerst International LLC's ("Wyeth") Fourth and Sixth Counterclaims, and Third, Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.

## PRELIMINARY STATEMENT

From the moment Neopharm filed this lawsuit to vindicate its rights and hold Wyeth accountable for its unlawful termination of the parties' Distribution Agreement, Wyeth's defense strategy has been clear and consistent:  avoid responsibility by any means necessary.  This strategy has manifested itself in myriad ways.  It was at the heart of Wyeth's reliance on fraudulent documents to assert counterclaims and defenses – now withdrawn or dismissed – intended to evade liability for its own unlawful conduct.[1]  And it is the sole basis for Wyeth's counterclaims and defenses that are the subject of this Motion.

The majority of these counterclaims and defenses rest on Wyeth's assertion that Neopharm's pre-termination conduct with respect to the non-Wyeth drug Otezla violated the Distribution Agreement.  Wyeth, however, has failed to adduce any evidence whatsoever that Neopharm's conduct constituted a breach of the Distribution Agreement.  To the contrary, the undisputed evidence proves that Neopharm's Otezla-related conduct was at all times and on all

---

[1] It was only after Neopharm confronted Wyeth with clear evidence of the documents' falsity and issued a Rule 11 letter that Wyeth (finally) withdrew the offending allegations.  *See* ¶¶ 26-29.

fronts in full compliance with Neopharm's obligations. Indeed, for well over a year, Wyeth has been fully aware that the sole factual allegations in its pleading supporting Wyeth's Otezla-related claims and defenses are indisputably false. Yet Wyeth has continued to pursue these claims and defenses – no doubt in the hope that its fishing expedition would uncover something that might arguably support its position. Now, fourteen months later, the results are in: Wyeth has failed to identify a scintilla of evidence that Neopharm's conduct with respect to Otezla in any way contravened its obligations under the Distribution Agreement. Certainly, Wyeth has not come close to demonstrating that Neopharm engaged in conduct that would in any way excuse Wyeth's unlawful termination of the Distribution Agreement. In fact, not only do the undisputed facts show that Neopharm's pre-termination Otezla activities did not come close to constituting a material breach of the Agreement, but also Wyeth indisputably failed to provide Neopharm with notice and opportunity to cure as is expressly required under the Agreement. For each of these reasons, Wyeth's attempt to evade accountability on the basis of Neopharm's purported Otezla conduct necessarily fails.

Wyeth's other defenses addressed in this Motion are likewise defective. These defenses rest on the notion that Neopharm somehow waived the right to seek damages resulting from the unlawful termination by virtue of (1) Neopharm's retention of Wyeth's unlawful termination payment, and (2) Neopharm's post-termination conduct, which Wyeth describes as being consistent with the Distribution Agreement having been terminated. Wyeth's position is baseless. The undisputed evidence shows that since the unlawful termination, Neopharm consistently and repeatedly made clear that it reserved all rights relating to, and intended to hold Wyeth accountable for, the substantial harm caused by Wyeth. The fact that Neopharm retained the funds paid by Wyeth in effectuating the unlawful termination (a mere down payment on

Neopharm's damages) or acted in accordance with the reality that it would no longer be distributing the Wyeth Products (in large part to prevent disruption in the supply of life-saving drugs to the Israeli population and to mitigate Neopharm's own substantial damages) in no way suggests otherwise.

Wyeth's persistent attempts to avoid responsibility for its own indisputably unlawful conduct should be rejected. Wyeth must be held fully accountable.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

## I.  THE DISTRIBUTION AGREEMENT AND WYETH'S UNLAWFUL TERMINATION

Neopharm, an Israeli pharmaceutical distribution company, and Wyeth had a longstanding business relationship of more than seventy years, dating back to before the founding of the State of Israel. ¶ 1.  During that time, the parties entered into a number of written agreements relating to the distribution of pharmaceutical products in Israel (¶ 2), the most recent of which is the Amended and Restated International Distributorship Agreement, dated October 1, 2002 (collectively with all amendments thereto, the "Distribution Agreement" or "Agreement").  ¶ 3.  The Agreement confirmed Neopharm Ltd. as Wyeth's exclusive marketer and distributor in Israel of all Wyeth prescription pharmaceutical products, including all Wyeth legacy and pipeline products (the "Wyeth Products" or "Products").[3]  ¶¶ 4-5.  Among the Products were Enbrel, a product that contains the active pharmaceutical ingredient etanercept and treats (among other conditions) rheumatoid arthritis, psoriasis, and psoriatic arthritis; and Prevenar, a pneumococcal vaccine that is included in Israel's National Immunization Program

---

[2] A summary of the most important facts is set forth herein.  The full set of undisputed material facts and record support relied on in connection with this Motion are set forth in the Statement Pursuant to Local Civil Rule 56.1 submitted herewith.  Unless otherwise stated, any paragraph references herein (i.e., "¶") are to the 56.1 Statement.

[3] The Agreement also expressly established Neopharm Israel and Promedico as authorized sub-distributors for the Wyeth Products.  ¶ 6.

3

for infants and which Promedico (a wholly owned subsidiary of Neopharm Ltd. and a Plaintiff in this action) contracted to supply to the Israeli Ministry of Health (the "MoH" or "Ministry"). ¶¶ 6, 10, 13.  *Id.*

On May 1, 2014, with no warning or justification, Wyeth sent a letter to Neopharm purporting to terminate the Distribution Agreement without notice or cause and effective immediately pursuant to Section 7.5(b) ("Termination Notice").[5] ¶ 14. The Termination Notice advised Neopharm that "payment in lieu of Section 7.1 notice" had been transmitted to Neopharm, and $28,768,400 (the "Payment" or the "$28.7 million") was wired to an Israeli bank account in the name of Neopharm Israel. ¶ 15. Neopharm, shocked by Wyeth's blatant disregard of the terms of the Agreement, immediately informed Wyeth that it had no right to terminate the Agreement under Section 7.5(b) and reserved all of its rights. ¶ 16. Nevertheless, to avoid disrupting the supply of life-saving medications to the Israeli population and to mitigate damages caused by the unlawful termination, Neopharm (at Wyeth's instruction) transferred the registrations for the Wyeth Products to Pfizer Israel. ¶ 17. In addition, and for the same reasons, Neopharm consented to the assignment of Promedico's agreement with the MoH for the supply of Prevenar to Pfizer Israel. ¶ 18. At all times, including in numerous communications, Neopharm reserved the right to challenge Wyeth's termination and to seek damages. ¶¶ 16, 19.

---

[4] ████████████████████████████████████████████ ¶ 9.

[5] The letter was sent by Miron Livneh, Pfizer Pharmaceuticals Israel Ltd.'s ("Pfizer Israel") Country Manager. In 2009, Pfizer Inc. acquired Wyeth. ¶ 7. Since then, the day-to-day business relating to the Products has been handled by Pfizer Israel on Wyeth's behalf. ¶ 8.

On October 14, 2014, Neopharm Ltd. and Promedico filed a complaint in this Court requesting a declaratory judgment that Wyeth had no right to terminate the Distribution Agreement under Sections 7.1 and 7.5(b) and that as a result, such termination was unlawful. ¶ 20. In December 2014, Wyeth filed an Answer and Counterclaims, seeking in its First Counterclaim a declaratory judgment that Wyeth was entitled to terminate the Agreement pursuant to Section 7.5(b) without cause as well as under Section 7.2(f) for cause. ¶ 21. Neopharm moved for judgment on the pleadings and to dismiss Wyeth's First Counterclaim, which motion was granted in March 2016. ¶¶ 23-24. The Court found that Wyeth was not permitted to terminate the Distribution Agreement without cause under Section 7.5(b) or with cause under Section 7.2(f). ¶ 24. The Court declared that "Wyeth violated the terms of the Distribution Agreement, as amended, when it purported to terminate that contract." ¶ 24.

Following the Court's order, Neopharm amended its Complaint to include a single breach of contract claim seeking damages from Wyeth's unlawful termination of the Distribution Agreement. ¶ 25. Neopharm subsequently filed a Second Amended Complaint in November 2016 to add Neopharm Israel, Neopharm Ltd.'s wholly owned subsidiary and an authorized sub-distributor under the Agreement, as a plaintiff. ¶ 30. Wyeth filed an Answer and Counterclaims in December 2016. ¶ 31. Of relevance to the instant motion and discussed herein are Wyeth's Fourth Counterclaim and Third Affirmative Defense (breach of contract based on Section 2.7(a));[6] Sixth Counterclaim and Fifth Affirmative Defense (breach of the implied covenant of good faith and fair dealing); and Fourth (accord and satisfaction), Sixth (waiver), Seventh

---

[6] Section 2.7(a) of the Distribution Agreement provides that "[d]uring the term of this Agreement, except as set forth in Annex C or as agreed in writing between the Parties, [Neopharm] shall not, within [Israel], directly or indirectly: . . . market or promote the sale or marketing of any products which are or can be reasonably deemed to be competitive with the [Wyeth] Products[.]" ¶ 34 (SAC Ex. A § 2.7(a)).

(estoppel), and Eighth (unclean hands) Affirmative Defenses.[7] ¶¶ 32-42. Neopharm filed an

answer to Wyeth's Counterclaims and Affirmative Defenses in December 2016 contesting the

claims and allegations contained therein. ¶ 43.

## II.  NEOPHARM'S OTEZLA-RELATED CONDUCT[8]



---

FOOTNOTE

[7] In December 2016, Wyeth filed a motion for partial summary judgment on its First, Second, and Third Counterclaims seeking return of the $28.7 million, which the Court denied. ¶ 44.

[8] Wyeth is taking the position in this litigation that Otezla is a drug that competes with Enbrel. ¶ 36. Though Neopharm disputes this point, whether Otezla can be reasonably deemed to be competitive with Enbrel is irrelevant to the instant motion.

[9] The NHB is the list of medicines, medical supplies and equipment, and medical services that the Sick Funds – nonprofit health maintenance organizations – are required to provide to their members under Israel's National Health Insurance Law. ¶¶ 67-68.



¶ 95.

¶¶ 72-73, 96.

¶ 103.

¶ 74.

¶¶ 75-76.

¶ 77.

¶ 78.

¶ 79.

On July 30, 2014, several months after the termination, Neopharm Scientific submitted an application for registration (i.e., a license or marketing authorization) for Otezla to the MoH. ¶ 84. Under Israeli law, it is impermissible to market or promote the sale or marketing of

---

[10]

¶ 98.

prescription pharmaceutical products prior to their registration. ¶¶ 45-49. 

The MoH granted registration for Otezla in June 2015. ¶ 87.

¶¶ 53, 88-89.

¶ 90.

## ARGUMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Although the moving party bears the initial burden of showing that no genuine dispute as to any material fact exists, to defeat a summary judgment motion, the non-moving party must make a sufficient showing on the essential elements of his case for which he bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990). Absent such a showing, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).[11]

A plaintiff (including a counterclaim plaintiff) cannot overcome a Rule 56 motion with "conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts") (citations omitted). Neither can a plaintiff rely on the "unsubstantiated allegations of its pleadings." *Ortho Diagnostic Sys., Inc. v. Abbott Labs., Inc.*, 920 F. Supp. 455, 471 (S.D.N.Y. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion under Rule 56. *Jeffreys*, 426 F.3d at 554 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, the plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *FDIC v. Wrapwell Corp.*, Nos. 93 Civ. 859 (CSH), 94 Civ. 5574 (CSH), 2002 U.S. Dist. LEXIS 76, at *16-17 (S.D.N.Y. Jan. 2, 2002) (quoting *Anderson*, 477 U.S. at 256).

## I. NEOPHARM IS ENTITLED TO SUMMARY JUDGMENT ON WYETH'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE FOR BREACH OF SECTION 2.7(a) OF THE DISTRIBUTION AGREEMENT

Wyeth's Fourth Counterclaim and Third Affirmative Defense allege that Neopharm breached Section 2.7(a) of the Distribution Agreement by engaging in purportedly impermissible conduct regarding Otezla prior to the Agreement's termination. Countercl., Dkt. 94 ¶¶ 83-91, 129-31. A breach of contract claim under New York law requires proof of (1) an agreement, (2) adequate performance by the party asserting the claim, (3) breach by the other party, and (4)

---

[11] The same standard applies to a motion for summary judgment on the nonmoving party's affirmative defenses. *See, e.g.*, *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 712 (S.D.N.Y. 2012); *Energy Capital Co. v. Caribbean Trading & Fid. Corp.*, No. 93 Civ. 8100 (JFK), 1996 U.S. Dist. LEXIS 4170, at *18-19 (S.D.N.Y. Apr. 3, 1996) (citing *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)).

damages.[12] *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Wyeth

bears the burden of proving each of these elements. Because Wyeth has failed to adduce any

proof – let alone "concrete evidence" – that Neopharm engaged in conduct in violation of

Section 2.7(a), Neopharm is entitled to summary judgment on Wyeth's Fourth Counterclaim and

Third Affirmative Defense. Moreover, Wyeth's Third Affirmative Defense fails for the

additional reason that Wyeth cannot demonstrate that any purported breach by Neopharm was

even close to material, as is required to provide a post-facto justification for Wyeth's

indisputably unlawful termination of the Distribution Agreement.

### A. Wyeth Has Presented No Evidence that Neopharm Breached Section 2.7(a) of the Distribution Agreement as is Required to Sustain Wyeth's Claim

Wyeth alleges that Neopharm's conduct with regard to Otezla was a direct violation of

Section 2.7(a) of the Distribution Agreement. Countercl. ¶¶ 88, 130. Wyeth, however, has

failed to adduce a shred of evidence demonstrating that Neopharm engaged in any pre-

termination conduct that constitutes "market[ing] or promot[ing] the sale or marketing" of Otezla

as is required to establish a breach of Section 2.7(a). *See* ¶ 34 (SAC Ex. A § 2.7(a)). This is true

under the clear and unambiguous language of Section 2.7(a), and it is true under Wyeth's

implausible and unsupportable interpretation of that same provision. Accordingly, Wyeth's

Fourth Counterclaim must be dismissed. *See First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152

F.3d 162, 168-69 (2d Cir. 1998) (affirming summary judgment dismissing breach of contract

claim because nonmovant failed to show that the terms of the agreement were violated); *Chock

Full O'Nuts Corp. v. Tetley, Inc.*, 152 F.3d 202, 204-05 (2d Cir. 1998) (affirming summary

judgment dismissing breach of contract action because plaintiff "failed to identify any reasonable

---

[12] The Distribution Agreement is governed by New York law. SAC Ex. A, Dkt. 93-1 § 9.8.

construction of the contract under which it would be entitled to prevail").

i.    Neopharm Did Not "Market or Promote the Sale or Marketing of" Otezla Prior to Wyeth's Unlawful Termination of the Distribution Agreement

Under New York law, "[t]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (citation omitted). A contract should not be interpreted "as if isolated from the context, but [instead] in the light of the obligation as a whole and the intention of the parties as manifested thereby." *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009) (citation omitted). A contract is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citations omitted). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Lockheed Martin*, 639 F.3d at 69; *see also Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002).

Applying these principles, it is apparent that under the clear and unambiguous language of the Distribution Agreement, Neopharm has not "market[ed] or promote[d] the sale or marketing of" Otezla as is required to establish a violation of Section 2.7(a). The central purpose of the Agreement, which continued a decades-long relationship between Neopharm and Wyeth concerning the marketing and distribution of prescription pharmaceutical products in Israel, was to confirm Neopharm as the exclusive distributor of the Products ***in Israel***. ¶ 4 (SAC Ex. A §§ 1.5, 2.1(a)); ¶¶ 1-2. In that capacity, the Agreement authorized Neopharm to promote and sell the Products in Israel to "Customers," defined as "any purchaser of the Products." ¶ 5 (SAC Ex. A §§ 1.3, 2.2); *see also* ¶ 60 (SAC Ex. A § 4.1(a) (Neopharm "shall use its best efforts to

promote the sale and use of the Products by all existing and potential Customers within [Israel][.]")).  In so doing, Neopharm was required to "comply with all laws, regulations and court orders applicable in [Israel][.]"  ¶ 62 (SAC Ex. A § 4.7).  At the same time, the Agreement prohibited Neopharm from marketing or promoting the sale of competing products in Israel without Wyeth's consent.  ¶¶ 34, 104 (SAC Ex. A § 2.7(a)).

It is undisputed that the marketing and promotion of prescription pharmaceutical products in Israel – the core subject of the Distribution Agreement and the issue addressed in Section 2.7(a) – is a highly regulated and well-defined subject with clear rules, including those addressing what conduct is and is not permitted.  ¶¶ 45-49, 51.  These regulations unequivocally prohibit any pharmaceutical company – including Neopharm – from marketing or promoting the sale or marketing of a pharmaceutical product such as Otezla in Israel prior to that product being registered with the MoH.[13]  *See* ¶¶ 45-49; Israeli Pharmacists Ordinance (New Version), Arts. 1, 47A(b) (1981) (establishing that no person shall market a product unless it is a registered product); *see also* Israeli Pharmacists Regulations (Medicinal Products), Art. 28(a) (1986) (establishing that no person shall advertise a product in a manner contradicting the information contained in the drug registry regarding that product).[14] ███████████████████

████████████████████████████████████████████████████

███████████████████████[15]  ¶ 47 (Fuhrer Dec. 2017 Decl. ¶ 5).

These regulations are not casual guidelines that a company can take or leave at will.

---

[13] Under the express terms of the Distribution Agreement, Wyeth was required to assist Neopharm in obtaining the necessary registrations for the Products in Israel.  ¶ 54 (SAC Ex. A § 5.1(a)).

[14] Copies of the cited regulations, including English translations, are attached as Exhibits 70 and 71 of the Bassin Declaration.

[15] ██████████████████████████████████████████████

█████████████████  ¶ 47 (Fuhrer Dec. 2017 Decl. ¶ 5).

They are fundamental rules by which pharmaceutical companies seeking to market products in Israel – including Pfizer Israel (the current registration holder for the Products, *see* ¶ 17) and Neopharm – must abide.[16] ¶¶ 45-49, 51, 55-56.  Because these regulations effectively define what it means for a pharmaceutical company to market and promote the sale of a pharmaceutical product in Israel, they necessarily control the scope of what is prohibited under Section 2.7(a) absent Wyeth's consent.  *See Fontana v. Potter*, No. 01 CV 7002 (SLT) (RML), 2005 U.S. Dist. LEXIS 49932, at *13-14 (E.D.N.Y. Aug. 24, 2005) (a contract should be interpreted as "viewed objectively by a reasonably intelligent person who has examined the context of the entire agreement ***and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business***") (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's London*, 136 F.3d 82, 86 (2d Cir. 1998)) (emphasis added); *Seven Star Shoe Co. v. Strictly Goodies, Inc.*, 657 F. Supp. 917, 920-21 (S.D.N.Y. 1987) (noting that a contract "must be construed according to the custom and use prevailing in a particular trade" and granting summary judgment for plaintiff on breach of contract claim where defendant failed to act in accordance with industry definition of "representative") (citation omitted); *see generally Law Debenture Trust Co.*, 595 F.3d at 466 (where an agreement incorporates terms that have a "definite meaning understood by those who use them" in a particular industry or trade, the court "must be informed of the meaning of the language as generally understood in that business, in light of the customs and practices" of same) (citations omitted).

Significantly, the manner in which the terms "market" and "promote" are used throughout the Distribution Agreement consistently reflects how these terms are uniformly

[16] ███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████ ¶ 56.

understood in the industry and defined by this regulatory framework. For example, Section 4.3, titled "Marketing Materials," states that Neopharm "shall advertise and promote the Products in accordance with applicable law in [Israel]," and that Neopharm "shall submit all promotional material . . . for prior approval by [Wyeth]." ¶ 61 (SAC Ex. A § 4.3). As an initial matter, this provision confirms that the Distribution Agreement uses the terms "marketing" and "promoting" interchangeably. *See id.* (bearing the title "Marketing Materials" but referring to advertising and promotion throughout). █████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████ ¶¶ 63-64 (including Fuhrer Dec. 2017 Decl. ¶¶ 9-10). ███████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ ¶ 65 (including Fuhrer Dec. 2017

Decl. ¶ 10).

█████████████████████████████████████████

███████████████████████████████████████████

██████[17] ██████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████ *See* ¶ 66.

Under well-settled law, the terms "market" and "promote" as used in Section 2.7(a) should be construed consistent with how these terms are used in these other sections of the Distribution

---

Agreement – namely, as reflecting the standard industry meaning as defined by the relevant regulatory framework. *See Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 116-17 (2d Cir. 2014) (rejecting an interpretation of a provision that caused a single term "to mean different things in different instances of its appearance"); *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 351 (S.D.N.Y. 2013) ("[A] Court may presume that the same words used in different parts of a writing have the same meaning.") (citation omitted).

Having established the clear and unambiguous meaning of Section 2.7(a), it is plain that Neopharm did not engage in any conduct in violation of this provision. It is undisputed that Otezla was not registered in Israel until June 2015, ***over one year*** after Wyeth's unlawful termination. As such, under established Israeli law, Neopharm could not possibly have marketed or promoted the sale or marketing of the product in Israel prior to that time.[18] *See* ¶¶ 45-49, 55. Indeed, Wyeth does not even suggest – let alone offer proof – that Neopharm marketed or promoted Otezla in contravention of these well-established laws and regulations. To the contrary, ██████████████████████████████████████████████████[19] ¶ 90.



██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ *See infra* pp. 18-19. ███████████████████

███████████████████████████████████████████████████████████

████████████████████████████████ *See supra* pp. 12-13. Accordingly, summary judgment

---

[18] In fact, it is undisputed that Neopharm did not even submit an application to register Otezla with the MoH until July 30, 2014, ***three months after*** Wyeth terminated the Distribution Agreement. ¶¶ 84-85. That application was granted in June 2015, and first batch approval – which is required prior to commercial sale of a prescription drug in Israel – was obtained in ██████████ ¶¶ 87-88.

[19] Had Neopharm marketed or promoted the sale of prescription pharmaceutical products prior to obtaining the necessary regulatory approvals, Wyeth no doubt would have asserted a breach of Section 4.7 of the Distribution Agreement, which required Neopharm to "comply with all laws, regulations and court orders applicable in [Israel][.]" *See* ¶ 62 (SAC Ex. A § 4.7). Wyeth did not and could not bring such a claim.

on Wyeth's Fourth Counterclaim should be granted.

        ii.      <u>Wyeth's Attempt to Save its Fourth Counterclaim Through a Self-Serving and Unsupported Interpretation of Section 2.7(a) Should be Rejected</u>

Recognizing that it cannot prove Neopharm actually "market[ed] or promote[d] the sale or marketing" of Otezla in Israel prior to the unlawful termination, Wyeth urges an interpretation of Section 2.7(a) that stretches the provision's terms beyond their clear and well-established meaning. Specifically, Wyeth has suggested that Section 2.7(a) prohibits certain ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *See* ¶ 57. Wyeth urges this construction even though Wyeth ███████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████ *See* ¶¶ 45, 51, 56-57. Wyeth's attempt to save its Fourth Counterclaim by expanding the language of Section 2.7(a) beyond its clear meaning should be rejected.

As discussed above, the central subject of the Distribution Agreement is the marketing and promotion of prescription pharmaceutical products in Israel – an area that is highly regulated and clearly defined. *See supra* pp. 12-13. ███████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████ ¶¶ 45-49, 51; *see also supra* pp. 12-13. Because Wyeth's construction of Section 2.7(a) seeks to disregard what both parties agree it means to market and promote a prescription pharmaceutical product in Israel in favor of a self-serving interpretation that is inconsistent with the language and intent of the Agreement, this construction cannot stand. *See supra* pp. 11, 13-14; *see also Law Debenture Trust Co.*, 595 F.3d at 468 ("[C]ourts may not by construction . . .

distort the meaning of [terms] used and thereby make a new contract for the parties under the guise of interpreting the writing.") (citation omitted).

Even if the Court were to accept Wyeth's implausible construction of Section 2.7(a),



*See Chock Full O'Nuts Corp.*, 152 F.3d at 204 ("[S]ummary judgment may be granted if under any of the reasonable interpretations the moving party would prevail."). The sole factual allegation in Wyeth's pleading supporting its claim that Neopharm breached Section 2.7(a) is that "[u]pon information and belief, Neopharm's efforts to have Otezla included in the NHB took place prior to March 1, 2014 (the deadline for NHB submissions for 2015)." ¶ 37 (Countercl. ¶¶ 86-87).

¶¶ 78-79.  In fact, contrary to Wyeth's unsupported assumption, the incontrovertible evidence establishes that (1)

(*see* ¶¶ 72-73, 76, 95-96); (2)

(*see* ¶ 103); (3)

(*see* ¶ 74); (4)

(*see* ¶ 75); and (5)

(¶ 77).



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[20] ¶¶ 78-79.

Nor is there any other evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To the contrary, the undisputed evidence establishes that:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶ 58; *see also* ¶ 48-51. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶ 59.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶ 100.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶¶ 94-95.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶ 101.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶¶ 73-80, 84-90, 97, 100-01. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶ 97.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶¶ 91-95.  These scant communications do not come close to demonstrating a breach of Section 2.7(a).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[20] Although documentary proof of the timing of the Otezla NHB application was presented to Wyeth in October 2016 (¶¶ 81-82), which conclusively demonstrated the falsity of  the allegations in Wyeth's pleading, Wyeth inexplicably continued to pursue its Fourth Counterclaim and Third Affirmative Defense. ¶ 83.

███████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████ ¶ 102

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████ ¶ 95. ████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ ¶¶ 72-73, 74-75, 95-96, 103.

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████ ¶¶

34, 104.  The Distribution Agreement thus specifically contemplates a scenario where Neopharm

would have preliminary discussions with a manufacturer about a competing product and, based

on such conversations, would determine whether to seek Wyeth's consent to market and promote

the sale of that product.  *See* ¶ 104.  █████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ ¶¶ 99, 105-07.  ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ [21] *See*

*Orfalea v. Clayton, Dubilier & Rice, Inc.*, No. 07 Civ. 2256 (BSJ) (GWG), 2009 U.S. Dist. LEXIS 91342, at *11 (S.D.N.Y. Sept. 30, 2009) (rejecting interpretation that would render the final sentence of the provision "superfluous and meaningless"); *Columbus Park Corp. v. Dep't of Hous. Pres. & Dev. of City of N.Y.*, 80 N.Y.2d 19, 31 (1992) ("[A] construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation[.]").

In sum, even under Wyeth's disingenuous interpretation of Section 2.7(a), Wyeth cannot meet its burden of demonstrating that Neopharm breached this provision prior to the unlawful termination. As such, Neopharm is entitled to summary judgment. *See Chock Full O'Nuts Corp.*, 152 F.3d at 204-05 ("Because [nonmovant] failed to identify any reasonable construction of the contract under which it would be entitled to prevail, summary judgment was properly granted[.]"); *Orfalea*, 2009 U.S. Dist. LEXIS 91342, at *11-13 (granting defendants summary judgment where even under nonmovant's interpretation of the agreement, "Defendants' actions do not amount to a breach of contract").[22]

---

[21] A construction of "market" and "promote" as used in Section 2.7(a) as encompassing such preliminary communications is also inconsistent with Section 2.7(c), which requires Neopharm and Wyeth to "agree . . . upon the appropriate and necessary structure to be established within [Neopharm's] organization to avoid any conflicts of interest" "[p]rior to [Neopharm] *marketing*" a competing product manufactured by any of the companies listed on Annex C of the Agreement. ¶ 108 (SAC Ex. A § 2.7(c)) (emphasis added). It would be nonsensical to interpret Section 2.7(c) to require Neopharm and Wyeth to first agree to a "structure to be established" to avoid conflicts of interest before Neopharm even engages in preliminary communications with its business partners regarding potential future marketing of a competing product. *See Katel LLC v. AT&T Corp.*, 607 F.3d 60, 65 (2d Cir. 2010) (declining to accept an "interpretation of the Agreement [that] leads to an illogical result"); *Eastman Kodak Co.*, 936 F. Supp. 2d at 351 ("[A] Court may presume that the same words used in different parts of a writing have the same meaning.") (citation omitted).

[22] *See also CSC Sci. Co. v. Manorcare Health Servs., Inc.*, 867 F. Supp. 368, 372 (S.D.N.Y. 2011) ("[S]ummary judgment is appropriate if the moving party would prevail under any reasonable interpretation of the contract."); *AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*, 72 F. Supp. 350, 355 (S.D.N.Y. 1999) ("[I]f neither interpretation would allow plaintiff to recover, divining the correct contractual interpretation remains a question of fact but an immaterial fact, and thus cannot salvage plaintiffs' breach of contract claim.").

## B.    Wyeth's Third Affirmative Defense Should Be Dismissed

Wyeth's Third Affirmative Defense reveals its Otezla assertions for what they truly are: yet another attempt to evade responsibility for its unlawful termination and the substantial resulting damages.  For several reasons, Wyeth's continued effort to avoid accountability should be rejected.  **First**, Wyeth's Third Affirmative Defense is premised entirely on the assertion that "Neopharm's conduct with regard to Otezla was a breach of Section 2.7(a)[.]"  Countercl. ¶ 88.  Yet as discussed above, Wyeth cannot demonstrate that Neopharm's pre-termination conduct with respect to Otezla violated Section 2.7(a).  *See supra* pp. 15-16, 20.

**Second**, even if Wyeth could somehow prove that Neopharm breached Section 2.7(a), any such breach is plainly immaterial and thus in no way excuses Wyeth's indisputably unlawful termination of the Distribution Agreement.  A party's performance is only excused under a contract where the other party commits a material breach – that is, a breach that "go[es] to the root of the agreement between the parties" and is "so substantial that it defeats the object of the parties in making the contract."  *See Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (noting that whether a party materially breached an agreement is a question of law) (citation omitted); *see also Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 731 (S.D.N.Y. 2000) (materiality "goes to the essence of the contract," meaning a breach is material if it "defeats the object of the parties in making the contract and deprives the injured party of the benefit that it justifiably expected") (citations omitted), *aff'd*, 294 F.3d 383 (2d Cir. 2002).

In this case, there can be no question that Neopharm substantially performed as the exclusive distributor of Wyeth Products in Israel under the Distribution Agreement, and that any purported breach by Neopharm relating to its pre-termination Otezla conduct was *de minimis* at

best and did not at all touch on the heart of the contract.  The fundamental purpose of the

agreement was to confirm Neopharm as the authorized and exclusive distributor of the Products

in Israel. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

█████████ ¶ 9. █████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████[23]

    Moreover, Wyeth has not shown that it suffered any harm whatsoever as a result of

Neopharm's pre-termination Otezla conduct – let alone that this conduct "defeat[ed] the object of

the parties in making the contract" as is required to establish a material breach.  *See Frank Felix*

*Assocs.*, 111 F.3d at 289. █████████████████████████████████████████

████████[24]  Because Wyeth cannot demonstrate that Neopharm's pre-termination Otezla

activities constituted a material breach of the Agreement, these activities cannot and do not

justify Wyeth's unlawful termination.  *See, e.g.*, *id.* at 289-90 (performance not excused where

party breached certain obligations but substantially complied with its other obligations under the

---

[23] Of course, as discussed above, even if Neopharm engaged in pre-termination activity such as seeking registration or reimbursement for Otezla ███████████████████ such activity does not constitute marketing or promoting the sale or marketing of Otezla in Israel and thus cannot constitute a breach of Section 2.7(a).  *See supra* pp. 12-13, 16.

[24] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

contract); *Times Mirror*, 103 F. Supp. 2d at 728-29, 731 (recission unavailable where failure to notify was "an immaterial breach" that "did not go to the essence of the contract between the parties"); *Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*, 333 F. Supp. 2d 131, 142-43 (S.D.N.Y. June 25, 2004) (defendant did not materially breach the contract where there were "at most only a few instances" when defendant was unable to accept payment from plaintiff's customers in violation of their contract, which was an "inconsequential number when compared to the number of successful transactions").

*Third*, Wyeth's attempt to use Neopharm's pre-termination Otezla conduct as a means of excusing Wyeth's own breach is precluded by Section 7.2(a) of the Distribution Agreement. Section 7.2(a) permits a party to terminate the Agreement "in the event the other party should fail to perform any of its material obligations hereunder *and* should fail to remedy such nonperformance within forty five (45) calendar days after receiving written demand therefor[.]" ¶ 109 (SAC Ex. A § 7.2(a)) (emphasis added). Not only is Wyeth unable to demonstrate that Neopharm failed to perform a material obligation under the Agreement (*see supra* pp. 15-16, 20), but Wyeth necessarily cannot prove that it satisfied its obligation to provide Neopharm with notice and opportunity to cure any alleged violation – given that the first time Wyeth ever alleged a breach of Section 2.7(a) was in an attempt to excuse its own unlawful termination of the Distribution Agreement. *See* ¶ 110. This in itself is sufficient to defeat Wyeth's defense.

## II. NEOPHARM IS ENTITLED TO SUMMARY JUDGMENT ON WYETH'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Wyeth's Sixth Counterclaim and Fifth Affirmative Defense for breach of the implied covenant of good faith and fair dealing also should be dismissed. Where the allegations

supporting a breach of the covenant of good faith and fair dealing claim "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action," summary judgment is appropriate. *Peabody v. Weider Publ'ns, Inc.*, No. 04 CV 2165 (GBD), 2006 U.S. Dist. LEXIS 93391, at *15-16 (S.D.N.Y. Dec. 22, 2006) (quoting *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005)), *aff'd*, 260 F. App'x 380 (2d Cir. 2008). Similarly, a claim for breach of the implied covenant "must fail as redundant where the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of . . . an express provision of the underlying contract." *Charity Grp., LLC v. Absolut Spirits Co.*, No. 08 Civ. 11020 (BSJ) (AJP), 2010 U.S. Dist. LEXIS 146014, at *19 (S.D.N.Y. June 29, 2010) (citation omitted).

Wyeth does not even attempt to mask the duplicative nature of its implied covenant claim and defense. In both cases, Wyeth explicitly alleges that Neopharm breached the covenant of good faith and fair dealing because its "conduct with regard to Otezla was a direct violation of Neopharm's anti-competitive obligations under the Agreement" – i.e., the obligations set forth in Section 2.7(a). Countercl. ¶¶ 102, 138. To support this allegation, Wyeth relies on the same alleged "conduct with regard to Otezla" that underlies Wyeth's Section 2.7(a) breach of contract claim and affirmative defense. Countercl. ¶¶ 102-03, 138-39. For this reason alone, Wyeth's Sixth Counterclaim and Fifth Affirmative Defense must be dismissed. *See Charity Grp.*, 2010 U.S. Dist. LEXIS 146014, at *19 (granting summary judgment where implied covenant claim was duplicative of plaintiffs' claim for breach of a nondisclosure agreement); *Peabody*, 2006 U.S. Dist. LEXIS 93391, at *15-16 (granting summary judgment where implied covenant counterclaim was "duplicative of the breach of contract claim").

Even if Wyeth's counterclaim and defense for breach of the covenant of good faith were not duplicative, they still fail as a matter of law. *First*, through this claim and defense Wyeth impermissibly attempts to expand the reach of Section 2.7(a) beyond its bargained-for terms. The implied covenant provides that "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (noting that "courts enforce the implied covenant where an implied promise was so interwoven in the whole writing of a contract as to be necessary for effectuation of the purposes of the contract") (citation omitted). "The scope of potential liability for breach of the covenant is quite narrow: such a breach cannot give rise to additional liability if it merely replicates the liability for breach of the underlying contract, nor can it create new contractual rights or impose additional duties." *Calico Cottage, Inc. v. TNB, Inc.*, No. 11-CV-0336 (DLI) (MDG), 2014 U.S. Dist. LEXIS 137816, at *31 (E.D.N.Y. Sept. 29, 2014) (citation omitted); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (implied covenant cannot "add to the contract a substantive provision not included by the parties") (citations omitted). Here, Wyeth is plainly attempting to use the implied covenant to expand the type of conduct that is precluded by the Distribution Agreement beyond that which is prohibited by Section 2.7(a). This is forbidden. *See Calico Cottage*, 2014 U.S. Dist. LEXIS 137816, at *31-32 (covenant of good faith cannot transform a limited prohibition into an extended prohibition).

*Second*, Wyeth has adduced no evidence that Neopharm engaged in any pre-termination conduct with respect to Otezla that could possibly be deemed a breach of the covenant of good faith and fair dealing, let alone one that excuses Wyeth's unlawful termination. *See supra* pp. 15-16, 20. ██████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ *See supra* pp. 18-20.  Such

conduct does not constitute a breach of the duty of good faith and fair dealing.  *See Calico*

*Cottage*, 2014 U.S. Dist. LEXIS 137816, at *32-33 (granting summary judgment on good faith

and fair dealing claim due to lack of evidence of bad faith); *Suthers v. Amgen Inc.*, 441 F. Supp.

2d 478, 485 (S.D.N.Y. 2006) ("Plaintiffs have no support for the broad proposition that an entity

violates the implied covenant of good faith and fair dealing by acting in its own self-interest

consistent with its rights under a contract.").

## III. NEOPHARM IS ENTITLED TO SUMMARY JUDGMENT ON WYETH'S REMAINING AFFIRMATIVE DEFENSES

### A. Wyeth's Accord and Satisfaction Defense Fails As A Matter of Law

"An accord and satisfaction is an agreement between two parties under which one party

accepts a stipulated performance by the other party in discharge of an unresolved obligation by

the latter party."  *Stahl Mgmt. Corp. v. Conceptions Unlimited*, 554 F. Supp. 890, 892 (S.D.N.Y.

1983); *Andrews v. Skott/Edwards Consultants, Inc.*, No. 81 Civ. 3961-CSH, 1983 U.S. Dist.

LEXIS 15730, at *8 (S.D.N.Y. July 1, 1983) (accord and satisfaction requires "[a]n agreement

whereby one party undertakes to give or perform, and the other to accept in settlement of an

existing or matured claim, something other than that which he believes himself entitled to")

(citation omitted).  To establish an accord and satisfaction, the defendant has the burden of

demonstrating an "intention [by plaintiff] to discharge the old obligation when the new one has

been performed."  *Stahl Mgmt. Corp.*, 554 F. Supp. at 893 (citation omitted).  In other words, the

defendant must show a "meeting of the minds" between the parties that partial payment by the

debtor was "clearly tendered as full satisfaction of the debt, and the payment was knowingly

accepted." *Platte River Ins. Co. v. Khan*, Nos. 13-CV-3265 (JG) (SMG), 13-CV-3416 (JG) (SMG), 2015 U.S. Dist. LEXIS 88271, at *17 (E.D.N.Y. July 7, 2015) (citation omitted).

Wyeth has failed to satisfy this burden. ***First***, Wyeth has failed to demonstrate that there was any dispute among the parties prior to Wyeth's rendering of the Payment, as is required to establish accord and satisfaction. *Andrews*, 1983 U.S. Dist. LEXIS 15730, at *9-10 ("It is clear that the payment of a lesser sum cannot function as an accord and satisfaction unless a bona fide dispute exists as to the amount owed. Furthermore, logic dictates that one cannot offer to settle a dispute by a substitute performance prior to the existence of that dispute."). To the contrary, the fact of the Payment itself – which Wyeth claimed was to effectuate termination of the Agreement – was the dispute. In such circumstances, accord and satisfaction does not apply. *See id*. at *12 (no accord and satisfaction where "[t]he controversy only arose" after plaintiff, "responding to th[e] proffered sum, expressed his dissatisfaction with it").

***Second***, Wyeth cannot demonstrate that Neopharm ever regarded the Payment as in full satisfaction of the harm caused by Wyeth's unlawful termination. Wyeth's accord and satisfaction defense rests entirely on the allegation that certain actions taken by Neopharm after it received the Termination Notice and Payment – such as transferring registrations for the Products to Wyeth's sister company Pfizer Israel or requesting that Wyeth repurchase Neopharm's remaining inventory of the Products – were purportedly "consistent with the [Distribution] Agreement having been terminated." *See* ¶ 39 (citing Countercl. ¶¶ 92-99). Yet the mere fact that Neopharm may have cooperated with Wyeth in winding down the parties' relationship after Wyeth unilaterally and unlawfully terminated the parties' Distribution Agreement says nothing of any intention to accept the Payment as full satisfaction of Wyeth's obligations under the Agreement. To the contrary, the undisputed evidence shows that after

receiving the Payment, Neopharm consistently and repeatedly advised Wyeth that Neopharm intended to hold Wyeth accountable for, and reserved all rights with respect to, the harm caused by Wyeth's unlawful conduct. ¶¶ 16, 19. The absence of any evidence that Neopharm intended to accept the Payment as fully discharging Wyeth's obligations under the Distribution Agreement compels summary judgment for Neopharm. *See Platte River*, 2015 U.S. Dist. LEXIS 88271, at *17-18, *31-32 (no accord and satisfaction where there was no evidence settlement payments were made in full satisfaction of defendants' obligations and where plaintiff specifically reserved its rights); *Golden v. Guar. Acceptance Capital Corp.*, 807 F. Supp. 1161, 1164-65 (S.D.N.Y. 1992) (no accord and satisfaction where there was "no evidence whatsoever that [plaintiff] had been clearly informed that the retainer he was receiving was intended to settle his potential claim").

### B. Wyeth's Waiver, Estoppel, and Unclean Hands Defenses Fail

Waiver is the "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 499 (S.D.N.Y. 2005) (citation omitted). Such waiver must be "clear, unmistakable, and without ambiguity." *Id.* (citations omitted). "[M]ere silence, oversight or thoughtlessness in failing to object to a breach of contract will not support a finding of waiver." *Bank of Am., N.A. v. WM. V. Schmidt Co.*, No. 10 Civ. 4926 (NRB), 2011 U.S. Dist. LEXIS 31285, at *26-27 (S.D.N.Y. Mar. 25, 2011) (citations omitted). With respect to estoppel, Wyeth must show "(1) [a]n act constituting a concealment of facts or a false misrepresentation; (2) [a]n intention or expectation that such acts will be relied upon; (3) [a]ctual or constructive knowledge of the true facts by the wrongdoer; and (4) [r]eliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *MBIA Ins. Corp.*, 842 F. Supp. 2d at 714 (citation omitted). Equitable estoppel requires "active concealment or misrepresentation; it is insufficient to merely allege that

the party to be estopped remained silent." *Cohen Lans LLP v. Naseman*, No. 14-CV-4045 (JPO), 2017 U.S. Dist. LEXIS 15547, at *23-24 (S.D.N.Y. Feb. 3, 2017).

Wyeth does not even allege – let alone offer proof – that Neopharm clearly and unambiguously intended to relinquish its legal rights by retaining the Payment (for waiver), or that Neopharm made any false representation of fact upon which it intended Wyeth to rely and upon which Wyeth in fact reasonably relied to its detriment (for estoppel).[25] To the contrary, the undisputed facts show that leading up to this litigation, Neopharm repeatedly and consistently asserted that the termination was unlawful and expressly reserved its rights to pursue "any and all" available remedies including the recovery of damages beyond the Payment.[26] *See ¶¶* 16, 19. Under these circumstances, summary judgment on Wyeth's waiver and estoppel defenses is appropriate. *See, e.g.*, *Bank of Am.*, 2011 U.S. Dist. LEXIS 31285, at *26-27 (rejecting defense of waiver where predecessor-in-interest to plaintiff "consistently asserted its right to the money and repeatedly requested that [defendant] . . . resolve the situation"); *Cohen Lans LLP*, 2017 U.S. Dist. LEXIS 15547, at *23-24 (no equitable estoppel where defendant failed to "allege any active concealment or misrepresentation").

Finally, Wyeth's unclean hands defense also fails. Unclean hands can only be invoked as an affirmative defense where a plaintiff is seeking equitable relief; the defense "does not apply to actions at law that seek money damages." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 477 (S.D.N.Y. 2005); *see also Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 638 F. Supp. 2d 360, 369 (S.D.N.Y. 2009) (unclean

---

[25] The sole allegation in Wyeth's Answer & Counterclaims in support of its barebones waiver and estoppel defenses is that "[t]o the extent that [Neopharm] continue[s] to retain and [is] not required to return the Payment in Lieu of Notice, this action is barred[.]" ¶¶ 40-41 (Countercl. ¶¶ 106, 108).

[26] Neopharm's continued retention of the Payment during the course of the litigation has been pursuant to the Court's order. ¶ 44.

29

hands is applied where a plaintiff "ask[s] for the invocation of an equitable doctrine").  It is

undisputed that Neopharm seeks only "an award of monetary damages," together with interest,

costs, and fees, in connection with its single claim for breach of contract (*see* SAC, "Request for

Relief" clauses).  As such, Wyeth cannot raise the defense of unclean hands.[27]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion

for Summary Judgment.

Respectfully submitted,

Dated:  December 22, 2017          WILSON SONSINI GOODRICH & ROSATI
       New York, New York          Professional Corporation


Michael S. Sommer
Jessica L. Margolis
Sheryl Shapiro Bassin
Dylan G. Savage
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 999-5800
Facsimile:  (212) 999-5899

and

Lawrence I. Fox, Esq.
250 West 82nd Street
New York, New York 10024
Telephone:  (917) 620-2778

*Attorneys for Plaintiffs and Counterclaim-*
*Defendants Neopharm Ltd., Promedico Ltd., and*
*Neopharm (Israel) 1996 Ltd.*

---

[27] Even if the defense of unclean hands were available, it still fails as a matter of law.  For the reasons set forth above, Wyeth has not demonstrated that Neopharm committed any "unconscionable" conduct and that Wyeth was harmed thereby – all of which are required to establish unclean hands.  *See Atl. Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 663-64 (2d Cir. 2013); *Roswell*, 638 F. Supp. 2d at 369-70.